**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ERIC OBUYGYEI,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | **NO.** |
| *v.* | : | |
| | : | **NEWARK VICINAGE** |
| **OFFICER FORROD BONSU** | : | |
| Hackensack Police Department | : | **JURY TRIAL DEMANDED** |
| 225 State Street | : | |
| Hackensack, NJ 07601 | : | |
| | : | |
| **-and-** | : | |
| | : | |
| **OFFICER MICHAEL KOENIG** | : | |
| Hackensack Police Department | : | |
| 225 State Street | : | |
| Hackensack, NJ 07601 | : | |
| | : | |
| **-and** | : | |
| | : | |
| **THE CITY OF HACKENSACK** | : | |
| 65 Central Avenue | : | |
| Hackensack, NJ 07601, | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Eric Obuygyei, by and through his undersigned counsel, O'Hanlon Schwartz, P.C., hereby demands a trial by jury and complains against the above-captioned Defendants in their individual capacities and/or pursuant to constitutional-violating customs and policies as follows:

1

**Statement of Claim and Jurisdiction**

1.     This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution against Defendants in their individual and/or policy-making capacities.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2.     Defendants Bonsu and Koenig, acting under color of state law, deprived Plaintiff of his constitutional rights by violating Plaintiff's Fourth Amendment rights not to be subjected to a malicious prosecution and by fabricating evidence contrary to the Fourteenth Amendment.

3.     The actions of Defendants Bonsu and Koenig were the result of customs and *de facto* policies of Defendant the City of Hackensack in using the criminal law to bully innocent citizens in order to shield police corruption and criminality and to perpetuate fabricated cases against innocent citizens such as Plaintiff.

**Parties**

4.     Plaintiff, Eric Obuygyei (hereinafter "Plaintiff"), is a citizen of the United States and at all times relevant to the claims arising herein was a citizen of the State of New Jersey and resident of Bergen County and the City of Hackensack.

5.     Defendant Forrod Bonso (hereinafter "Defendant Bonsu") is and was at all times relevant to this complaint duly appointed and acting officer of law enforcement agencies, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New Jersey and the City of Hackensack.  He is being sued in his individual capacity.

6.     Defendant Michael Koenig (hereinafter "Defendant Koenig") is and was at all times relevant to this complaint duly appointed and acting officer of law enforcement agencies, acting

under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New Jersey and the City of Hackensack. He is being sued in his individual capacity.

7.     Defendant the City of Hackensack is a municipal corporation and the public employer of all individual Defendants.

## Facts

8.     Prior to his arrest in 2023, Plaintiff was in an occasional relationship with a woman by the name of Jocelyn DeGroat. Defendant Bonsu also had a relationship with Ms. DeGroat.

9.     Ms. DeGroat ran a brothel in the City of Hackensack and the residence from where prostitution occurred was also used to sell illegal narcotics and firearms. Ms. DeGroat also engaged in welfare and social security fraud from the brothel on behalf of herself and other prostitutes that worked at the brothel. The brothel was also frequented and used by known criminals to sell drugs and guns and avail of other ill-gotten gains.

10.     Defendants Bonsu and Koenig provided protection for the brothel but also directly engaged in illegality therein and profited from same by extracting part of the illegal activity profits that occurred in the brothel. Defendants Bonsu and Koenig also paid Ms. DeGroat and received bribes from her.

11.     Approximately three to four weeks before his arrest, for example, Plaintiff saw Defendant Bonsu drop off ghost gun parts to the brothel in a duffel bag and Plaintiff saw the gun parts inside the bag. Ms. DeGroat also relayed to Plaintiff the illegal activities of Defendants Bonsu and Koenig as described herein.

12.     On or about April 24, 2023 and because Plaintiff was met with threats from Ms. DeGroat when Plaintiff told Ms. DeGroat that he was ending their relationship, Plaintiff told Ms.

3

DeGroat that he would report her illegal activities to police and relevant federal agencies. Defendants Bonsu and Koenig began looking for Plaintiff on the same day in order to silence Plaintiff and they searched for Plaintiff and let other people know that they were looking for Plaintiff.

13.     On April 25, 2023, based upon the false reporting of Defendants Bonsu and Koenig, Plaintiff was arrested and charged with, *inter alia*, Terroristic Threats and Harassment.  Plaintiff never did anything to Complainant, Ms. DeGroat, and certainly did not threaten Ms. DeGroat.

14.     Based upon the known false allegations that were sent to the prosecutor and the grand jury, Plaintiff was indicted as of Bergen County docket number 23-08-00709-I.

15.     Plaintiff remained incarcerated because of this matter until and after his trial in April of 2025.  On April 8, 2025, a jury adjudicated Plaintiff Not Guilty as to all charges.

16.     Plaintiff was released from custody on July 23, 2025.

17.     On April 25, 2023, Plaintiff had called 911 on his way to work because his life was threatened by phone and Plaintiff was put through to Kenilworth Police Department.  Plaintiff relayed this information to Defendants Bonsu and Koenig by showing Plaintiff's cell phone call log.  Defendants Bonsu and Koenig manipulated this by stating, instead, that Ms. DeGroat had called 911 to report Plaintiff threatening Ms. DeGroat's life.  However, bodycam footage from Defendant Koenig showed that Defendant Koenig admitted that there was no 911 call from Ms. DeGroat and, instead, Defendants Bonsu and Koenig went to meet Ms. DeGroat to conspire and manufacture a criminal case against Plaintiff.

18.     In addition, bodycam footage was cut and altered by Defendants Bonsu and Koenig and/or bodycam footage wholly debunked Defendants Bonsu and Koenig's lies.  For example, Defendants Bonsu and Koenig stated and testified that Ms. DeGroat was transported to police

4

headquarters to give a statement but there was no bodycam or other records to support same and a statement was unnecessary because the allegations against Plaintiff were concocted by Defendants Bonsu and Koenig.

19.    Defendants Bonsu and Koenig also destroyed documents.  For example, Defendant Bonsu said that he took police paperwork relating to Plaintiff home and the paperwork was destroyed and/or lost.

20.    Defendants Bonsu and Koenig also altered video footage of Plaintiff when Plaintiff was in an interrogation room at Hackensack Police Department and this was apparent at trial because the dates and the sequence of the video did not align with what happened or with any potential reality.

21.    The Hackensack Police Department has been rife with corruption and criminality and there has been inadequate oversight, training, and supervision to correct same.   In 2009, there were 21 filed lawsuits against the city and former Police Chief Ken Zisa. Some alleged that the former chief had coerced them to contribute to his campaigns for public office and punished them when they declined. The city has paid more than $8 million to settle such complaints.  In 2010, Anthony Ferraioli, a police officer and the police union president, was suspended for six months after it was determined that he posed as an internal affairs officer in an internet forum. In 2010, Ken Zisa, the former police chief, surrendered to the Bergen County Prosecutor's Office on a charge of insurance fraud stemming from a 2008 car accident in which his girlfriend at the time hit a pole with her car. Zisa was accused of ordering police officers to falsify their reports and taking his girlfriend from the scene before a sobriety test could be conducted. Zisa was convicted of fraud and other charges, but they were overturned on appeal.  In 2012, the city paid $2.48 million to a department dispatcher and former girlfriend of Zisa's brother, Frank, who was

Hackensack's deputy police chief. Alessandra Viola alleged that she faced disciplinary charges after she resisted sexual advances by both Ken and Frank Zisa and shielded officers from the chief's attempts to intimidate them to vote for certain candidates in a 2008 union election. In 2016, Civilian Police Director Michael Mordaga resigned amid lawsuits that alleged he had overstepped the legal authority of his position by conducting interrogations of criminal suspects and becoming involved in internal affairs investigations. In 2016, the last two of four police lawsuits that claim Mordaga retaliated against police officers, failed to act on complaints of harassment or overstepped his authority, were settled. Mordaga has since been named in a federal lawsuit brought by the family of alleged mobster Frank P. Lagano. The family claims that while Mordaga was the Bergen County Chief of Detectives, he and others in the Prosecutor's Office leaked Lagano's identity as a state informant and, as a result, caused his execution-style murder. Sergeant Sara Malvasia filed a federal lawsuit alleging that city police officers covered up for her husband, Niles Malvasia, who was also a police officer, after he beat her and prevented her from going to work. Niles Malvasia suffered from post-traumatic stress disorder, or PTSD, as a result of witnessing the October 2015 shooting of Jose Ronaldo Santos-Alvarez. He had been "acting erratically and violently" ever since, his wife said in the suit. Niles Malvasia retired from the department. These examples exhibit a custom and *de facto* policy of false reporting, evidence manipulation and coverup, lack of oversight, and misuse of the criminal justice process without any oversight or rectification for bad acts. These *de facto* policies and customs are continuing and continued up until 2023 when plaintiff was arrested. *See, e.g., Zisa v. Haviland, et al.*, 17-cv-5551 (DNJ); *Sharif v. City of Hackensack*, 17-cv-12410 (DNJ); *Luna-Diaz v. City of Hackensack Police Department*, 16-cv-3270 (DNJ)

6

22.     Defendants' actions perpetrated against Plaintiff constitute a malicious prosecution pursuant to the Fourth Amendment of the United States Constitution as well as Manufacturing of Evidence under the Fourteenth Amendment.  Defendants Bonsu and Koenig had full knowledge of the lack of any legitimate cause or justification, and the conduct was intentional, malicious, reckless, and in bad faith.  As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer  mental anguish, he was incarcerated without any justification, and Plaintiff suffered vocational and family association-related injury.

23.     At all times during the events described above, Defendants Bonsu and Koenig were engaged in a joint venture.  Defendants Bonsu and Koenig assisted each other in performing the various actions described herein and lent their physical presence and support and the authority of their offices to each other during the said events.  Defendants Bonsu and Koenig acquiesced in the joint venture and this was exhibited by their joint explicit verbal agreement and commands, their joint gestures, and their joint physical actions that were directed at violating Plaintiff's rights.  Each and every individual Defendant, acting individually and jointly, caused injury to Plaintiff for no reason, and initiated a baseless and fabricated prosecution against Plaintiff.

24.     Defendants Bonsu and Koenig's actions, acting under color of state law, deprived Plaintiff of his rights under the Constitution of the United States; in particular, the right not to be maliciously prosecuted and to not have evidence manufactured against him in violation of his Fourth and Fourteenth Amendment rights.

25.     By these actions, Defendants have deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. Section 1983.  As a direct and proximate result of the said acts of Defendants, Plaintiff suffered the following injuries and damages:

7

a.      Violation of his Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

b.      Emotional and economic injury;

26.     The actions of Defendants violated the following clearly established and well-settled federal constitutional rights of Plaintiff:

a.      Freedom from malicious prosecution and having manufactured evidence presented as the basis for criminal charges and continuing criminal charges that were violative of Plaintiff's Fourth and Fourteenth Amendment rights.

27.     Defendants' actions were malicious, illegal, unlawful, and directed at depriving Plaintiff of his constitutional rights.

28.      Defendant the City of Hackensack took no preventative or corrective action such as adequate training or discipline and allowed known illegal customs and practices to continue both prior to and subsequent to Plaintiff's arrest and prosecution.

## Causes of Action

### COUNT ONE:  42 U.S.C. § 1983 – FOURTH AMENDMENT (MALICIOUS PROSECUTION) VIOLATIONS BY PLAINTIFF AGAINST ALL DEFENDANTS

29.     Plaintiff incorporates paragraphs 1 through 28 above as though fully set forth.

30.     Defendants initiated a meritless criminal proceeding against Plaintiff without probable cause and the criminal proceeding ended in Plaintiff's favor when Plaintiff was adjudicated not guilty as to all charges on April 8, 2025.

31.     Defendants acted individually and in concert in perpetuating a baseless criminal prosecution against Plaintiff and did so acting under color of law in order to continue their corrupt and criminal enterprise.

8

32.    The whole prosecution was based upon Defendants Bonsu and Koenig's fabrication, lies, and intimidation.  The process initiated and perpetuated was unreasonable and had no basis in law.

33.    All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983, including the right to be free from malicious prosecution.

34.    Defendants intentionally engaged in a malicious prosecution whereby they initiated a false and malicious prosecution without probable cause in violation of Plaintiff's constitutional rights and in order to suppress Plaintiff's reporting of Defendants Bonsu and Koenig's criminality. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights, and therefore warrants the imposition of exemplary and punitive damages to punish and deter Defendants and others like the Defendants from further wrongdoing.

35.    Defendant the City of Hackensack had and continues the have a custom and *de facto* policy manipulating and falsifying evidence and covering up same by misusing the criminal justice system and this is exhibited by Defendant the City of Hackensack having taken no remedial action in Plaintiff's case and other similar cases.

36.    Plaintiff should, therefore, be compensated for the violations of his Fourth Amendment rights.

37.    All of the aforementioned acts of Defendants Bonsu and Koenig were carried out under the color of state law and by Defendants Bonsu and Koenig of in their individual capacities with all actual and/or apparent authority afforded to police officers.

38.    All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth Amendment to the

9

Constitution of the United States of America and in violation of 42 U.S.C. § 1983, including right to be free from malicious prosecution.

39. All individual Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights and safety and, therefore, warrants the imposition of exemplary and punitive damages.

40. Plaintiff should, therefore, be compensated for the violation of his Fourth Amendment rights.

### COUNT TWO: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT MANUFACTURING/FABRICATING EVIDENCE, DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW BY PLAINTIFF AGAINST ALL DEFENDANTS

41. Plaintiff incorporates paragraphs 1 through 40 above as though fully set forth.

42. Defendants Bonsu and Koenig, acting individually and in concert, and within the color of their employment which deprived Plaintiff of his clearly-established constitutional right to due process of law and to a fair trial by engaging in:

**Fabrication:** Defendants fabricated evidence including but not limited false 911 reporting, false transportation of a witness, destroying documents, and altering video recordings. This fabrication continued at trial via false testimony and through the presentation of false documentary evidence concocted by Defendants Bonsu and Koenig.

43. The individual Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly-established Constitutional rights. No reasonable officer or official would have believed this conduct was lawful.

10

44.     The manufactured evidence continued to be used against Plaintiff until April 8, 2025 when Plaintiff was adjudicated not guilty.

45.     Defendants' acts and omissions, as described above, were the direct and proximate cause of Plaintiff's injuries. Defendants knew, or should have known, that their conduct would result in Plaintiff's wrongful prosecution and the harms he sustained as a direct result.

46.     Defendants intentionally engaged in a malicious prosecution whereby they initiated a malicious prosecution based upon manufactured evidence in violation of Plaintiff's constitutional rights. This conduct is outrageous, willful, wanton, malicious, and done with reckless disregard for Plaintiff's rights, and therefore warrants the imposition of exemplary and punitive damages to punish and deter the individual Defendants and others like the individual Defendants from further wrongdoing.

47.     For at least twenty years prior to Plaintiff's arrest, Defendant the City of Hackensack implemented, oversaw, and failed to correct a custom and *de facto* policy whereby its officers routinely concealed evidence and manufactured charges against individuals to cover up baseless use of police criminality and corruption.

48.     Defendant the City of Hackensack continues the custom and policy by having taken no remedial action in Plaintiff's case and other cases and by failing to train, supervise, and discipline officers such as the individual Defendants.

49.     Plaintiff should, therefore, be compensated for the violations of his Fourteenth Amendment rights.

## Prayer for Relief

**WHEREFORE,** Plaintiff respectfully request that this Honorable Court for each Count alleged:

a.      Award compensatory damages to Plaintiff against Defendants, jointly and severally;

b.      Award punitive damages to Plaintiff against the individual Defendants, to punish them for their wanton conduct as alleged herein and to deter further wrongdoing jointly and severally;

c.      Award costs of this action to the Plaintiff;

d.      Award reasonable attorneys' fees, which authorized by statute, and costs to the Plaintiff pursuant to 42 U.S.C. §§ 1983 and 1988 and any other applicable law;

e.      Award such other and further relief, as this Court may deem appropriate.

## Demand for Jury Trial

Plaintiff hereby demands a jury trial.

## Local Civil Rule 11.2 Certification

Pursuant to Local Rule 11.2, I hereby certify that the above-captioned matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**O'HANLON SCHWARTZ, P.C.**

STEPHEN T. O'HANLON, ESQUIRE

12

DATE:  February 17, 2026

**O'HANLON SCHWARTZ, P.C.**
Stephen T. O'Hanlon, Esquire (NJ Bar # 027612008)
2 Penn Center, Suite 1410,
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel:  (267) 546-9066
Fax: (215) 563-6617
steve@ohanlonschwartz.com
Attorney for Plaintiff